755 So.2d 293 (1999)
Robert COUSSAN, Jr.
v.
JIM TATMAN'S MOBILE HOMES, INC., Belmont Homes, Inc., and Juneau's Mobile Home Towing.
No. 99-956.
Court of Appeal of Louisiana, Third Circuit.
December 15, 1999.
*294 John Hatch Hughes, Bruce D. Beach, Lafayette, LA, for Robert Coussan, Jr.
Steven J. Bienvenu, Opelousas, LA, for Jim Tatman's Mobile Homes, Inc., et al.
Kenny Layne Oliver, Lafayette, LA, for Belmont Homes, Inc.
Timothy David Breaux, Lafayette, LA, for Juneau's Mobile Home Towing.
Before: COOKS, PETERS and PICKETT, Judges.
PICKETT, Judge.
This case involves the purchase of a manufactured home by the Plaintiff and Plaintiff's subsequent claims against the manufacturer, Belmont Homes, Inc. ("Belmont"), the seller, Jim Tatman's Mobile Homes, Inc. ("Tatman"), and Juneau's Mobile Home Towing ("Juneau") for defects in the home. Plaintiff filed a suit in redhibition. Belmont asserted a defense in trial memorandum under the New Home Warranty Act. Plaintiff claims Belmont's briefing on the exclusivity of the New Home Warranty Act was essentially an attempt to assert an affirmative defense not contained in the pleadings. The trial court relied in part on the New Home Warranty Act in its written Reasons for Judgment. The court assessed no damages to Belmont but did find a redhibitory defect and awarded $2,500.00 against the seller, Tatman and declined to award attorney fees. Plaintiff now appeals. For the following reasons, we affirm.

BACKGROUND
In June 1995, Plaintiff purchased a mobile home from Tatman. Juneau's Mobile Home Towing transported and set-up the home which was delivered in October 1995.
After the set-up Plaintiff noticed some defects. He alleges he could see the ceiling *295 rafters showing through the blown on textured acoustic material on the cathedral ceiling, that there were slits in the vinyl floor in the kitchen and that there were other cosmetic defects. Plaintiff notified Tatman and Tatman made certain repairs. Plaintiff alleges that nothing was ever done about the defects he noticed in the ceiling.
In the summer of 1996, Plaintiff had his home inspected and was informed that there was a problem with the level of the floor and that it was bowing. By this time, cracks were also visible in the mobile home's walls and ceiling.
In October 1996, Plaintiff filed suit in redhibition alleging he was entitled to recission of the sale of the mobile home against Belmont, Tatman and Juneau. Tatman filed a cross-claim for indemnity against Belmont. Juneau moved for and was granted an involuntary dismissal.
Plaintiff's expert testified that he had been retained by a mobile home retailer in the New Orleans area to repair very similar defects in mobile homes of the same width as Plaintiff's trailer, 16 feet. Adams believed that the bowed floors, cracked walls and ceilings, and visible roof members showing through the textured ceiling in Plaintiff's mobile home were caused by an absence of perimeter blocking, which allowed the walls to sag in areas where there were open span areas with no support walls. According to Adams, this problem was especially pronounced in areas where there were open spans with sections of the wall cut out, such as over the window in the living room. In those areas, where the headers over the windows added additional weight, the outriggers running out from the I-beams underneath the trailer and supporting the exterior walls were simply not sufficient to hold the weight and prevent the walls from sagging.
Mr. Adams testified that he could not make a formal estimate of the actual cost of repair without tearing out at least a portion of the ceiling and seeing whether or not the ceiling joists and beams had become separated from the central header. However, he estimated the repair costs would range between $12,000.00 and $18,000.00. The Defendants introduced controverting expert testimony which presented a much lower cost-of-repair estimate.
The trial judge found redhibitory defects existed at the time of delivery awarding $2,500.00 in damages against Tatman and rendering a take-nothing judgment in favor of Belmont under the New Home Warranty Act. However, the judgment granted Tatman indemnification from Belmont plus legal interest, attorney's fees in the amount of $3,941.47, expert fees and costs. Plaintiff then appealed.

ASSIGNMENTS OF ERROR
(1) The trial court erred in basing its decision on an unplead affirmative defense, over Plaintiff's timely objection.
(2) The trial court erred by disregarding Belmont's stipulation that the case was to be tried under the redhibition articles, which became the "law of the case" by virtue of the parties' Pre-Trial Stipulations.
(3) The trial court erred in ruling that redhibition is not an available remedy against the manufacturer of a mobile home, based upon the exclusive remedy provision of the New Home Warranty Act.
(4) The trial court manifestly erred in failing to award Plaintiff his reasonable and necessary attorney's fees, and in making an abusively low award of damages.

OPINION
Plaintiff's first assignment of error suggests a threshold issue of whether the New Home Warranty Act, La.R.S. 9:3141 et seq., is an exclusive remedy between buyer and manufacturer. Plaintiff asserts it was improper for the trial court to consider the New Home Warranty Act because it was an unplead affirmative defense and the parties had stipulated the *296 case was to be tried under the redhibition articles.
The New Home Warranty Act has an explicit exclusivity provision which states: "This Chapter provides the exclusive remedies, warranties, and prescriptive periods as between builder and owner relative to home construction and no other provisions of law relative to warranties and redhibitory vices and defects shall apply...." (Emphasis added). La.R.S. 9:3150. A builder is one who constructs a home, and a home is any new structure designed and used only for residential use. La.R.S. 9:3143. Therefore, the New Home Warranty Act governs an action by the Plaintiff, homeowner, against Belmont, the "builder" and provides the exclusive remedy. The New Home Warranty Act is only exclusive between "builder and owner" and does not preclude a separate theory of recovery against Tatman, the seller, in a redhibition action who is entitled to seek indemnification from any contributing party. See also, Squyres v. Nationwide Housing Systems, Inc., 98-8 (La.App. 3 Cir. 6/3/98); 715 So.2d 538; Turner v. Fleetwood Homes of Alabama, Inc., 97-1510 (La.App. 3 Cir. 4/1/98); 711 So.2d 742.
Plaintiff acknowledges the exclusivity provisions of the New Home Warranty Act but argues that Defendant's failure to specifically plead it as an affirmative defense renders it inappropriate for consideration and that an action in redhibition is justified. We do not subscribe to Plaintiff's argument.
Affirmative defenses are addressed in La.Code Civ. P. art. 1005. Defendant's cite to the New Home Warranty Act does not present an affirmative defense as defined in that article. An affirmative defense is based on something that has or has not been done related to the cause of action. Here the question pertains to the law that governs the cause of action. Furthermore, courts can take judicial notice of the laws and statutes of the state and that judicial notice may be taken at any stage of the proceeding. La.Code Evid. Art. 202.
Therefore, even if the Defendant had not briefed the court on the New Home Warranty Act, the court was at liberty to take judicial notice of any applicable law. We find Plaintiff's argument in this regard without merit. Additionally, we have reviewed the pre-trial stipulations and do not find that the parties stipulated the redhibition articles were the "law of the case." Having found no stipulation, we will not discuss the merits of such a stipulation.
After considering the testimony of the Plaintiff and the expert witnesses presented by both parties, the trial court found that the Plaintiff failed to prove the defects were the fault of the manufacturer, Belmont Homes, Inc., due to noncompliance with the building standards as required by the New Home Warranty Act. Finding Plaintiff failed to prove violation under the New Home Warranty Act, attorney's fees are not warranted.
Regarding redhibition actions involving mobile homes, La.R.S. 51:911.23(F), provides that "in any redhibitory action brought against the seller of a manufactured home or mobile home, the standards set forth in the Code shall be considered in establishing whether or not a defect exists." National Mobile Home Construction and Safety Standards Act, 42 U.S.C. § 5401 et seq. La.R.S. 51:911.22(1).
In order to prevail in an action in redhibition, the purchaser has the burden of establishing: (1) that the thing sold is absolutely useless for its intended purpose or that its use is so inconvenient that it must be supposed that he would not have bought it had he known of the defect; (2) that the defect existed at the time of the purchase, but was neither known or apparent to him; and (3) that the seller was given the opportunity to repair the defect. Lafleur v. Desormeaux, 96-906 (La.App. 3 Cir. 3/5/97); 692 So.2d 617.
*297 The purchaser has the burden of proof of establishing by a preponderance of evidence that the defect existed at the time of the purchase, but was neither known or apparent to him. Also, he must prove that the thing sold is absolutely useless for its intended purposes or that its use is so inconvenient that it must be supposed that he would have bought it had he known about the defect. LeBlanc v. Mercedes-Benz of North America, Inc., 93-907 (La. App. 3 Cir. 3/2/94), 633 So.2d 399, writ denied, 94-1225 (La.7/1/94), 639 So.2d 1169; Lafleur v. Desormeaux, 96-906 (La. App. 3 Cir. 3/5/97); 692 So.2d 617. The trial court found Plaintiff proved the existence of a redhibitory defect at the time of the delivery under La.Civ.Code art. 2530. Plaintiff was awarded $2,500.00 from the Defendant, Jim Tatman's Mobile Homes.
After reviewing the record and Reasons for Judgment, we note vast disparity in the repair estimates presented by expert testimony. Further, Plaintiff failed to mitigate damages by collecting rent from the friend he allowed to live in the home after Plaintiff moved out. See, Graf v. Jim Walter Homes, Inc., 97-1143 (La. App. 1 Cir.1998); 713 So.2d 682. We cannot find that the trial court committed manifest error in its determination of its award of $2,500.00.
Additionally, with regards to attorney's fees we defer to the trial court's findings. In order to award attorney fees, the Plaintiff must prove the seller, Tatman, was aware of the defects prior to the sale. La.Civ.Code art. 2545. We find no such evidence and also note Tatman's good faith effort to make certain repairs when first notified by the Plaintiff of such defect. Accordingly, attorney's fees are not warranted.
The trial court awarded Tatman attorney's fees and in its answer they have requested additional attorney's fees for the work done on appeal. We hereby grant additional attorney's fees in the amount of $2,500.00.
For the foregoing reasons, we affirm and all costs are assessed against the Plaintiff, Robert Coussan, Jr.
AFFIRMED.